```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

ANTHONY SHAMBURGER,

                        Plaintiff,      **No. 1:15-cv-00107(MAT)**
                                             **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.

## INTRODUCTION

Represented by counsel, Anthony Shamburger ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On September 16, 2011, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging disability beginning February 17, 2010, due to back, neck, and shoulder pain. After the claim was initially denied on December 7, 2011, Plaintiff requested a hearing, which was held on March 7, 2013, in Buffalo,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

New York, before administrative law judge Robert T. Harvey ("the ALJ"). Plaintiff appeared with his attorney and testified, as did impartial vocational expert Esperanza DiStefano ("the VE"). At the hearing, Plaintiff's counsel amended the onset date to February 20, 2010. On March 28, 2013, the ALJ issued an unfavorable decision. (T.15-33).[2] Plaintiff's request for review by the Appeals Council was denied on December 8, 2014, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2015, and had

---

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

not engaged in substantial gainful activity since February 20, 2010, the alleged amended onset date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: discogenic cervical spine, discogenic lumbar spine, radiculopathy of the cervical spine and lumbar spine, and left shoulder impingement syndrome.

At step three, the ALJ compared Plaintiff's impairments to the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1, giving particular attention to Listing 1.02 (Dysfunction of a joint(s)) and Listing 1.04 (Disorders of the spine). The ALJ found that Plaintif does not meet the criteria of Listing 1.02 because he is able to ambulate effectively and can perform fine and gross upper extremity movements effectively. The ALJ found that Plaintiff does not meet the criteria of Listing 1.04 because there is no evidence of sensory or reflex loss, or an inability to ambulate effectively.

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1576(b), except that he cannot lift more than 10 pounds; can only occasionally bend, climb, squat, kneel, balance, and crawl; can only occasionally push and pull with his upper extremities; and cannot be exposed to cold, dampness, or temperature extremes in the workplace.

At step four, the ALJ relied on the VE's testimony to find that Plaintiff has past relevant work ("PRW") as a machine set up

operator (Dictionary of Occupational Titles ("DOT") #649.380-010, skilled (SVP 7), medium); machine tender (DOT #649.687-040, semi-skilled (SVP 3), heavy, but actually performed by Plaintiff at a lighter exertional level); fork lift operator (DOT #921.683-050), semi-skilled (SVP 3), medium); and housekeeping cleaner (DOT #323.687-014, unskilled (SVP 2), light). The ALJ also found, based on the VE's testimony, that Plaintiff cannot perform his PRW.

The ALJ then determined that Plaintiff was 45 years-old on the alleged amended onset date, making him a "younger individual age 18-49" under the Regulations; with a limited education and the ability to communicate in English; and without any transferable skills.

At step five, the ALJ relied on the VE's testimony that a person of Plaintiff's age and with his education, work experience, and RFC can perform the requirements of representative occupations such as parking lot attendant (DOT #915.473-010, of which 126,160 and 290 jobs exist nationally and regionally, respectively); ticket taker (DOT #344.677-010, of which 105,590 and 490 jobs exist nationally and regionally, respectively); and garment marker (DOT #369.687-026, of which 434,170 and 2,300 jobs exist nationally and regionally, respectively). Accordingly, the ALJ entered a finding that Plaintiff has not been under a disability, as defined in the Act, from February 20, 2010, through the date of decision.

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. Failure to Properly Weigh Treating Chiropractor's Opinion (Plaintiff's Point I)**

Plaintiff argues that remand is required because the ALJ failed to acknowledge, much less weigh, the multiple statements by treating chiropractor Dr. Scott Croce that Plaintiff was under a total, temporary disability. Plaintiff treated with Dr. Croce from

September 10, 2010, through November of 2011. (See T.347-440, 441, 593-97). On September 13, 2010; October 6, 2010; November 4, 2010; December 2, 2010; December 30, 2010; January 11, 2011; February 3, 2011; February 24, 2011; March 16, 2011; April 14, 2011; May 12, 2011; June 14, 2011; July 12, 2011; and August 9, 2011, Dr. Croce issued updated treatment plans stating that Plaintiff was under a "total" and "temporary" disability. (See T.438, 432, 424, 411, 406, 400, 394, 388, 381, 375, 368, 361, 356).

First, and most importantly, a statement or opinion that a claimant is totally or partially "disabled" or is under a "disability", even from an acceptable medical source such as a treating physician, is not entitled to any particular weight. See SSR 96-5p: Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 362206, 61 FR 34471-011996 (S.S.A. July 2, 1996). Pursuant to 20 C.F.R. § 404.1527(e) and § 416.927(e), "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability[.]" SSR 96-5p, 61 FR at 34472. Among these issues are whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings; whether an individual's RFC prevents him or her from doing past relevant work; and whether an individual is "disabled" under the Act. Id. "[T]reating source opinions on issues that are reserved to the

-6-

Commissioner are never entitled to controlling weight or special significance[,]" id., because to do so would effectively "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Id. Nevertheless, treating source opinions on dispositive issues "must never be ignored" but "must [be] evaluate[d]" along with "all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id.

However, as Plaintiff concedes, Dr. Croce, as a chiropractor, although he treated Plaintiff, is not considered an "acceptable medical source" such as a "treating source" who can provide medical opinions. E.g., Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide medical opinions.") (footnote omitted). Only "acceptable medical sources" are "treating sources" whose opinions may be entitled to controlling weight. See 20 C.F.R. §§ 404.1513(a), (d); id., § 404.1527(a)(2); Social Security Ruling ("SSR") 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); see also Diaz, 59 F.3d at 313-14 (holding that district court erred in holding that the chiropractor's opinion had "binding effect . . .

in the absence of substantial evidence to the contrary"; "[u]nder the current regulations, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read to *require* the ALJ to give controlling weight to a chiropractor's opinion") (emphasis in original; footnote omitted).

Plaintiff's argument that the ALJ failed to even consider Dr. Croce's treatment notes is unpersuasive. In his decision, the ALJ did refer to a July 2011 note from Dr. Croce. (T.25 (citing T.360)). "When, as here, the evidence of record permits [the reviewing court] to glean the rationale of an ALJ's decision," courts "do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (court would remand for further findings or a clearer explanation where it could not fathom the ALJ's rationale "in relation to evidence in the record," but court would not remand where it was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence")). Moreover, Dr. Croce's various statements to the effect that Plaintiff was "temporarily" and "totally" disabled were superseded by Dr. Croce's treatment

-8-

note on September 6, 2011, releasing Plaintiff to work with an RFC greater than that assigned by the ALJ. (T.350). Specifically, Dr. Croce opined that Plaintiff could lift up to 30 pounds, which is much greater than the 10-pound lifting restriction imposed by the ALJ. Dr. Croce indicated that Plaintiff should not sit, stand, or walk for more than 2 hours without taking a break, which supports the ALJ's finding that Plaintiff could perform the essential requirements of the jobs identified by the VE, all of which permit a sit/stand option. (T.75). Dr. Croce's RFC is not at odds with SSR 96-9p, which allows for regular work-breaks and a lunch break. See SSR 96-9p, Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."); see also id. at *7 (discussing effect of need to alternate sitting and standing on RFC assessment). Therefore, Dr. Croce's limitation of Plaintiff to no more than 2 hours of continuous sitting, standing, or walking would not preclude Plaintiff's performance of the jobs identified by the VE. Moreover, although Dr. Croce assigned some postural limitations, he did not indicate that such limitations precluded Plaintiff from working. In any event, the ALJ similarly limited

Plaintiff to no more than occasional bending, stooping and climbing.

## II. Failure to Properly Weigh Treating Physicians' Opinions (Plaintiff's Point II)

Plaintiff contends that the RFC finding is unsupported by substantial evidence because the ALJ failed to sufficiently explain why he did not adopt the opinions by treating physicians Dr. Graham R. Huckell in May of 2010, that Plaintiff was "temporarily disabled" and by Dr. Zair Fishkin in June, 2010, November 2010, and February 2011, that Plaintiff was under a "temporary disability". (See T.281, 289, 301, 305).

As discussed above, "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance[,]" See SSR 96-5p, 1996 WL 362206, 61 FR at 34472; see also id. at 34473 ("[T]he [ALJ] is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner."); id. at 34474 ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work,' or make similar statements of opinions. . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. . . . [E]ven when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Nevertheless, Plaintiff is correct that treating source opinions on dispositive issues "must [be]

evaluate[d]" along with "all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id.

Here, the ALJ did not err in declining to adopt the statements by Drs. Huckell and Fiskin on the ultimate issue of Plaintiff's disability. See, e.g., Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (unpublished opn.) ("[Treating source] Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted). For instance, at Dr. Huckell's initial evaluation on May 18, 2010, Plaintiff rated his pain as a 10 on a scale of 1 to 10, with 10 being the worst pain. Although Plaintiff had positive straight-leg-raising test results, he was non-tender to palpation through the leg, knee, and gastrocnemius regions; he had full range of motion ("ROM") of the hip, knee, and ankle; there was no instability in the ankle or knee; he had full strength in his right lower extremity; and a right knee x-ray was within normal limits. Likewise, when Dr. Fishkin evaluated Plaintiff on June 3, 2010, he complained of back pain rated at an 8 out of 10 on average. On examination, however, Plaintiff's gait was normal and he rose from a chair without difficulty. Although his lumbar ROM was limited, he had functional ROM in his elbows, wrists, knees, hips, and ankles;

negative straight-leg-raising; normal strength bilaterally in his lower extremities; and x-rays of the lumbar spine showed no evidence of spondylolysis, spondylolisthesis, or segmental instability. Dr. Fishkin recommended only conservative treatment, namely, chiropractic adjustment.

The ALJ also considered Plaintiff's own testimony and statements regarding his daily activities, which were inconsistent with Drs. Huckell's and Fishkin's findings of total, albeit temporary, disability. For instance, although he claimed disability starting in February of 2010, Plaintiff told Dr. Huckell in May of 2010 that his recreational activities included playing basketball and jogging. (T.307).

Thus, the ALJ's explanation that, due to their inconsistency with the doctors' respective examination findings and the record as a whole, Dr. Huckell's and Dr. Fishkin's restrictive opinions were entitled to "little weight," was sufficiently detailed and supported by substantial evidence.

Moreover, as the ALJ noted, Dr. Huckell's and Dr. Fishkin's statements as to Plaintiff's total and temporary disability do establish inability to work that met the Act's durational requirement (i.e., that his disability lasted or can be expected to last for at least 12 months). In his notes from June 2010, to February 2011, Dr. Fishkin indicated that Plaintiff's temporary disability would last 1 to 3 months. (T.281, 289, 301). Dr. Huckell similarly indicated in May of 2010, that Plaintiff's disability was

"temporary." (T.305). Even viewed cumulatively, Drs. Huckell's and Fishkin's opinions on disability do not amount to an opinion that Plaintiff had an inability to work that had lasted or was expected to last for a period of 1 year. See, e.g., Houston v. Colvin, No. 12-CV-03842 NGG, 2014 WL 4416679, at *10 (E.D.N.Y. Sept. 8, 2014) ("The ALJ ultimately concluded that this opinion was not entitled to great weight because '[Dr. Fazzini] examined the claimant shortly after her accident and there is no subsequent opinion detailing her ability to function one year after her onset.' Even if this opinion were from the appointment about five months after [the claimant]'s initial accident, it would not have established that [she] had met the twelve-month duration requirement, which was the primary shortcoming of Dr. Fazzini's opinion already in the record.") (internal citation to record omitted).

**III. Erroneous Reliance on Plaintiff's Statements Regarding His Abilities**

Plaintiff faults the ALJ for citing his own testimony that he could perform a "light" exertional level job, and had looked for light work. (See T.26 ("In sum, the above residual functional capacity assessment is supported by the objective findings, the claimant's daily activities, and the claimant's admission that he is able to perform light duty, full-time work.")).

As an initial matter, the Court notes that "[w]hen determining a claimant's RFC, the ALJ is *required* to take the claimant's reports of pain and other limitations into account[.]" Genier v.

Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929; McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980); emphasis supplied); see also 20 C.F.R. § 404.1529). "The ALJ *must* consider '[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings.'" Genier, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1512(b)(3); citing 20 C.F.R. § 404.1529(a); SSR 96-7p); brackets in original; emphasis supplied).

At the hearing, Plaintiff testified that he would be able to work as long as the work was "not strenuous." (T.49). Plaintiff also noted that he had been looking for work during the application process, specifically, light-duty, dull-time work. (T.41). When the ALJ inquired asked what Plaintiff meant by "light duty," Plaintiff replied that he was referring to such jobs as a mail sorter (DOT #209.687-026), a position which the DOT considers to be "light" work. (T.41-42). As far as his physical abilities, Plaintiff testified at the hearing that he can lift 10 pounds with his left arm, walk one-half a block at a time, stand for 15 minutes, and sit for 15 to 20 minutes without a problem. He could reach overhead and hold his arms straight out in front of him without a problem, but could not squat, stoop, or climb without a problem. As far as

-14-

pushing and pulling without a problem, he replied that it depended. The ALJ's RFC assessment limiting Plaintiff to sedentary work with some further restrictions was not inconsistent with Plaintiff's own testimony and statements about his capabilities.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally erroneous and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

s/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: September 12, 2017
       Rochester, New York.